# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CRIMINAL CASE NO. 1:19-cr-00028-MR-WCM-2

| | |
|---|---|
| RODNEY DEJUAN ALLISON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Pro Se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 389]; Application to Proceed in Forma Pauperis [Doc. 390]; Motion for Leave to File a Reply [Doc. 391]; Motion for Discovery and Production of Documents [Doc. 394]; Motion for Leave to Amend [Doc. 395]; and Motion for Recusal [Doc. 396].

## I.    PROCEDURAL BACKGROUND

On April 2, 2019, Petitioner Rodney Dejuan Allison ("Petitioner") was charged along with seven co-conspirators with one count of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) (Count One); four counts of distribution of crack

cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts Two, Three, Seven, and Nine); one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Four); one count of distribution of crack cocaine and methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Eight); one count of possession with intent to distribute crack cocaine and amphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Twelve); two counts of being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Counts Fourteen and Seventeen); one count of possession with intent to distribute marijuana and crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count Fifteen); two counts of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Counts Thirteen and Sixteen); two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Counts Twenty and Twenty-Three); and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Twenty-Eight). [Doc. 16: Bill of Indictment]. On Petitioner's claim of indigency, counsel was appointed for Petitioner at his initial appearance. [4/12/2019 Minute Entry]. At Petitioner's arraignment a few days later, Petitioner's retained counsel, Andrew Banzhoff, appeared, and his appointed counsel was allowed to withdraw. [4/15/2019 Minute Entry].

On August 7, 2019, Petitioner was charged in a Superseding Indictment with the same counts as in the original Indictment. [Doc. 86: Superseding Indictment]. The following week, Attorney Sean Devereux, Mr. Banzhoff's law partner, also appeared for the Petitioner. [Doc. 90].

On October 24, 2019, Petitioner agreed to plead guilty to Count One pursuant to a written plea agreement and the Government agreed to dismiss the remaining counts. [Doc. 141 at ¶¶ 1-2: Plea Agreement]. The parties agreed to recommend, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), that certain drug quantities were reasonably foreseeable to the Petitioner. [Id. at ¶ 8(a)]. On November 1, 2019, Petitioner pleaded guilty pursuant to the plea agreement. [Doc. 148: Acceptance and Entry of Guilty Plea]. In advance of Petitioner's sentencing, which was originally set for October 22, 2020, a probation officer prepared a Presentence Report (PSR). [Doc. 222: PSR]. The probation officer recommended a base offense level of 34 based on the drug quantities involved, a two-level firearm enhancement, a two-level drug premises enhancement, a three-level enhancement for Petitioner's role in the offense, and a two-level enhancement for obstruction, for a total offense level of 43. [Id. at ¶¶ 94-96, 98-99, 103]. The probation officer did not recommend a reduction for acceptance of responsibility. [Id. at ¶ 102].

Petitioner's sentencing hearing was continued and eventually reset for April 29, 2021. The day before sentencing, however, Petitioner filed a pro se motion for appointment of new counsel due to "irreconcilable differences" with Attorney Devereaux. [Doc. 313]. The Court granted Petitioner's motion, again continued the sentencing hearing, and appointed Attorney Scheer to represent Petitioner.[1] [4/29/2021 Minute Entry; 4/30/2021 Docket Entry]. Then, on June 22, 2021, James Banks, Jr., and William Thomas moved to appear pro hac vice to represent Petitioner. [Docs. 315, 316; see Docs. 321, 322]. After initially denying their motions without prejudice, the Court granted Banks' and Thomas' motions to represent Petitioner pro hac vice and granted Attorney Scheer's motion to withdraw. [Docs. 319, 323, 326, 327].

On February 24, 2022, the Court conducted Petitioner's sentencing hearing. [Doc. 356: Sentencing Tr.]. After considerable discussion, the Court found that Petitioner's conduct imperfectly allowed for a reduction in his offense level for acceptance of responsibility. [See id. at 61-62]. That is, Petitioner initially committed perjury in a related civil forfeiture action, Civil Case No. 1:19-cv-61-MR, by denying he was a drug dealer, denying being involved with known co-Defendants, denying the fact of his residence, denying that crack cocaine was seized from his person during the execution

---

[1] Attorney Banzhoff, Attorney Devereaux's law partner, was also terminated at this time.

of a search warrant in September 2018, and committing various other acts obstructing the Government's investigation. [See Doc. 222 at ¶¶ 69-70, 88, 91, 99; Doc. 187: Gov'ts Objections to PSR; see also Doc. 334: Downward Departure Mot.]. Subsequently, while detained at the Swain County Detention Center (the "Jail") in Bryson City, North Carolina, Petitioner learned that other detainees were actively executing a plan to smuggle drugs, firearms, and other weapons into the Jail by burning a hole in a window and that these detainees intended to harm any detention officer attempting to stop them. [Doc. 334 at 13]. Petitioner reported this to his attorney, Banks, in real time, and Banks immediately reported the potential breach and plan to the Jail. [Id.]. Local law enforcement responded, thwarting the plot just in time. [Id. at 14]. They found a recently burned hole in a window and a "burning smell" in the air. [Id.]. Five of Petitioner's fellow detainees were arrested and charged for their involvement in the plot. [Id. at 15-16]. Based on this "rehabilitative acceptance," the Court applied the three-level reduction for acceptance of responsibility and otherwise accepted the PSR as written. [Doc. 356 at 61-62, 65]. The total offense level was 40 and the Petitioner's criminal history category was 5, yielding a guidelines range of 360 months to life imprisonment. [Id. at 65].

The Court then turned to the Government's 21-page motion for a downward departure under U.S.S.G. §5K1.1 in which the Government requested a four-level reduction. [Id.; see Doc. 334 at 17]. In its motion, the Government recounted the entire cooperation process, which began in earnest with law enforcement in Asheville, North Carolina, in March 2021. [Doc. 334 at 2-4]. Law enforcement conducting the proffer found Petitioner to be less than forthcoming, minimizing his criminal activity and the criminal activity of others. [Id. at 4]. Later, from efforts by Plaintiff's attorney, Devereaux, law enforcement out of Atlanta, Georgia, spent eight hours debriefing Petitioner, who they considered a person of interest in a homicide. [Id. at 4-5]. Based on that debriefing, Atlanta law enforcement believed Petitioner was an eyewitness to a murder by Jamil Williamson in Fulton County, Georgia, and might be able to assist in recovering the murder weapon. [Id. at 5-6]. However, despite Petitioner's claims that he knew Williamson for a significant period and even lived with him, Petitioner was initially unable to identify Williamson's photograph. [Id. at 7]. The Petitioner's inability to identify the photograph raised questions about whether he was being entirely truthful in his proffer and, for obvious reasons, gave the District Attorney's Office reservations about calling him as a witness at any trial. [Id. at 7-8].

As the April 29, 2020 sentencing hearing approached, it became apparent Petitioner would persist in denying relevant conduct and would attempt to discredit co-conspirators Harry James Odum and Jeffrey Allen Wright, both of whom cooperated against him, through the testimony of co-defendant William Luther Downs, Jr., Petitioner's stepson, whom the Court had already sentenced to a term of 108 months' imprisonment. [Id. at 8-9]. Petitioner and Downs, who were both housed at the Jail after Downs was returned to this District to testify at Petitioner's sentencing, with help from Petitioner's mother, had been meeting at a door between pods to plan Downs' testimony. At Petitioner's prompting and with Downs believing it would also help reduce his own sentence, Downs intended to falsely testify that he was never involved with Petitioner's drug dealings. [Id. at 9-10]. As noted, however, Petitioner's sentencing did not occur as scheduled in April 2020. Rather, the Court granted Petitioner's pro se motion for new counsel and Attorney Devereaux's oral motion to withdraw at that time. [Id. at 11].

Williamson eventually pleaded guilty in his pending criminal case in Fulton County, Georgia, to voluntary manslaughter, one count of aggravated assault with a deadly weapon, and one count of possession of a firearm by a convicted felon. [Id. at 11-12]. Williamson had been charged with murder, three counts of felony murder, two counts of aggravated assault with a

deadly weapon, possession of a firearm during commission of a felony, and two counts of possession of a firearm by a convicted felon, but the District Attorney reported that Petitioner's problematic out-of-court identification of Williamson contributed greatly to the decision to offer the plea as described. [Id. at 12]. Nonetheless, Petitioner's proffer in the Williamson case was memorialized and provided to Williamson in discovery. As such, Williamson was aware that Petitioner was cooperating and that he was a potential witness against Williamson. [Id. at 12-13].

Based on the foregoing, the Government did not believe Petitioner met the criteria under §5K1.1 or that a downward departure motion was appropriate. [Id. at 11]. The Government, however, believed Petitioner's subsequent cooperation by his reporting the plot to smuggle drugs and weapons into the Jail, as described above and recounted in the Government's motion in detail, constituted "very substantial" assistance. [Id. at 13].

After hearing Petitioner's argument for a greater than four-level departure, the Court noted, "the recounting of the information that forms the basis of the Government's motion is more extensive in this case than literally any other such motion [previously] entertained" before the Court. [Doc. 356 at 69: Sentencing Tr.]. The Court found, "in accordance with what is set forth

there and is uncontested … the [Petitioner] has provided substantial assistance in the investigation of [*sic*] prosecution of other individuals, and that such assistance warrants the granting of a downward departure." [Id. at 69-70].  Turning to the determination of the extent of the departure, the Court noted that a four-level departure is "unusual," and a greater departure is "very unusual, at least for this Court." [Id. at 70].  The Court also noted its surprise at the Government's request because the "totality of the circumstances set forth in the motion" did not strike the Court as warranting four levels.  [Id.]. The Court noted the difficulty in assessing the value of the cooperation here and that the Government "is the party that has the understanding of how much assistance has helped or hindered or how the help and the hindrance work together to come to some sort of conclusion." [Id. at 71].  The Court, therefore, found, "in accordance with the Government's motion, that the nature and extent of all of the activity of the [Petitioner] as set forth in the Government's motion for downward departure warrants a departure the equivalent of four offense levels," yielding a sentencing range of a 292 to 365 months' imprisonment.  [Id.].  The Court sentenced Petitioner to a term of imprisonment of 310 months.  [Doc. 340 at 2: Judgment].  Judgment on Petitioner's conviction was entered on February 28, 2022.  [Id. at 1].

Petitioner appealed. Petitioner's attorney on appeal filed a brief under Anders v. California, 386 U.S. 738 (1967), stating there were no meritorious grounds for appeal but questioning whether the prosecutor engaged in misconduct at sentencing. United States v. Allison, No. 22-4148, 2023 WL 4181301, at *1 (4th Cir. Jun. 26, 2023). Petitioner also filed a pro se supplemental brief, arguing that this Court erred by applying the three-level aggravated role enhancement and the two-level firearm and drug premises enhancements. Id. The Fourth Circuit affirmed, finding no prosecutorial misconduct and no error in applying the disputed enhancements. Id. at *2-*3. The Fourth Circuit, in accordance with Anders, also reviewed the entire record and found no meritorious issues for appeal. Id. at *3.

Petitioner timely filed the instant Section 2255 Motion to Vacate. [Doc. 389]. As grounds, Petitioner claims this Court abused its discretion by considering irrelevant events and "impermissible information" in the Government's §5K1.1 motion in determining the extent of departure granted under §5K1.1. [Id. at 4, 7]. Petitioner also argues that he received ineffective assistance of counsel because (1) his attorney failed to use exonerating evidence, causing Plaintiff to plead guilty "where otherwise he would have successfully moved to dismiss the indictment or would have been acquitted at trial" and (2) his appellate counsel failed to challenge the extent of the

Court's departure under §5K1.1 on appeal.[2]   [Id. at 5, 13].   For relief,

Petitioner seeks an evidentiary hearing and an additional reduction in his

sentence "to accurately reflect [his] assistance."   [Id. at 12].

## II.   STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides

that courts are to promptly examine motions to vacate, along with "any

attached exhibits and the record of prior proceedings" to determine whether

the petitioner is entitled to any relief on the claims set forth therein.   After

examining the record in this matter, the Court finds that Petitioner's Motion

to Vacate can be resolved without an evidentiary hearing based on the

record and governing case law.   See Raines v. United States, 423 F.2d 526,

529 (4th Cir. 1970).

---

[2] Petitioner has filed several other motions in this matter, including a motion for leave to amend his motion to vacate and a motion to recuse the undersigned.  [See Docs. 390, 391, 394-396]. The Court addresses the motion to recuse below.  Regarding the motion to amend, Petitioner asks to amend his motion to vacate "to more clearly and concisely articulate the grounds raised [and] provide proper cites to the record to assist the Court in its review." [Doc. 395 at 2].  Petitioner does not seek to raise any new or additional claims.  [Id.].  Alternatively, Petitioner asks to supplement his motion to vacate with a "Supplement to Ground 4" that he submitted with his motion to amend.  [Id.; see Doc. 395-1].  In this Supplement, Petitioner rehashes some of the same "uncontested facts" previously presented and presents additional argument in support of his claim of ineffective assistance of appellate counsel.  [See Doc. 395-1].  The Court will grant Petitioner's motion to amend insofar as the Court has reviewed and considered the Supplement in adjudicating Petitioner's motion to vacate.  The Court will deny any other relief sought in the motion to amend because the grounds for relief Petitioner presented in his motion to vacate were sufficiently clear and concise to allow review in the first instance.

## III. DISCUSSION

### A. Extent of Downward Departure

Section 5K1.1(a) of the U.S.S.G. enumerates a non-exclusive list of factors a court may consider in determining whether a departure should be granted and, if so, the extent of such departure:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from the assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. §5K1.1(a). "Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." Id., Application Note 3. "[T]he sentencing judge must … state the reasons for reducing a sentence under [5K1.1]." Id., Commentary. See also 18 U.S.C. § 3553(e).

Petitioner argues that the Court abused its discretion by considering "impermissible factors" in determining the extent of downward departure under §5K1.1. [Doc. 389 at 4, 7]. He argues that the Court abused its discretion by considering all the information set forth in the Government's motion when it should have considered only information relative to his reporting the Jail plot. [Doc. 389-1 at 4-6]. Petitioner argues that "if one era of cooperation justified a greater than four-level downward departure, then that is what should have been granted," without regard to "hindering actions that had no effect of that specific instance of cooperation." [Id. at 6-7]. Petitioner also contends, without elaboration, that the Court "employed an incorrect standard when determining the net value of the [Petitioner's] cooperation." [Id. at 5].

Petitioner points to United States v. Concha, 861 F.3d 116 (4th Cir. 2017), in support of his motion. [Doc. 389-1 at 2]. In Concha, the government had moved under §5K1.1 for a 50% downward departure from the sentencing range based on the defendant's participation in a controlled delivery and provision of information about individuals across the country involved in drug trafficking. 861 F.3d at 118. The district court noted its struggle with the requested departure because the assistance also showed the breadth of the defendant's involvement in those drug crimes. Id. at 118-

13

19.  In ordering a 40% reduction from the 210-month sentence the court would have otherwise imposed, the court noted that the defendant's "description of his cooperation supports a conclusion that [he] has been involved in a much larger conspiracy beyond that stated in the offense conduct[.]"  Id. at 119.  In reviewing whether the district court abused its discretion, the Fourth Circuit noted that, as to §5K1.1 departures, "our case law requires a district court determining the extent of such a departure to consider assistance-related factors *only*."  Id. at 120 (citing United States v. Pearce, 191 F.3d 488, 492 (4th Cir. 1999)) ("[A]ny factor considered by the district court on a § 5K1.1 motion must relate to the nature, extent, and significance of the defendant's assistance.").  The Fourth Circuit noted that, "in explaining its concerns, the court never suggested that the extent or quality of [the defendant's] assistance was insufficient to merit a 50% reduction."  Rather, "the district court pointed to the scope of the charged conspiracy and the level of [the defendant's] culpability as to that conspiracy" in support of the decision to award a 40% departure.  Id. at 121.  The Fourth Circuit concluded, therefore, that the district court abused its discretion by considering such factors.  Id. at 121.

Concha is wholly distinguishable from this Court's departure determination in the instant case.  Here, the Government's downward

departure motion set forth the Petitioner's assistance relative to the Fulton County, Georgia murder, which in the Government's view was insufficient to warrant a downward departure, and then the "very substantial" assistance Petitioner provided relative to the Jail plot. After reviewing the motion, the Court noted its surprise that the Government was seeking a four-level departure given "totality of the circumstances set forth in the motion." The Court also noted the difficulty in assessing Petitioner's cooperation here and relied on the Government's understanding of the assistance, finding "in accordance with the Government's motion, that the nature and extent of all of the activity of the [Petitioner] as set forth [therein]" warrants a four-level departure. The Government based its four-level departure request solely on Petitioner's Jail plot assistance, noting that the other assistance provided by Petitioner was insufficient to support a §5K1.1 motion. Petitioner's argument that the Court essentially lowered the extent of departure it would have otherwise awarded because it factored in Petitioner's acts unrelated to the Jail plot is unsupported by the record.

In short, Concha stands for the proposition that the extent of a §5K1.1 departure cannot be based on factors other than the extent, nature and effectiveness of the defendant's cooperation. In the present case, the Court granted a four-level departure *solely* on the Defendant's cooperation: both

the essentially ineffective (and possible feigned) cooperation in Georgia, as well as the much more substantive cooperation at the North Carolina jail. The Court noted that it was "unusual" for it to award a four-level departure and would have been "very unusual" for it to award more than that, but it nonetheless granted the Government's motion because the Government was in a better position to evaluate *the Defendant's assistance* than the Court. There is simply nothing in the record to support that the Court would have awarded more than four levels had the Government's motion been limited to only information regarding the foiled Jail plot.[3]

Furthermore, §5K1.1 allows the Court to consider any factor "related to the nature, extent, and significance of the defendant's assistance." Pearce, 191 F.3d at 492. Petitioner points to no prohibition against a court collectively considering "the nature, extent, and significance" of a defendant's multiple instances of cooperation in determining whether a defendant has provided "substantial assistance" warranting a departure, and the Court is aware of none. The Court, therefore, will deny this ground for relief.

---

[3] The Court easily portends that it would award no more than a four-level departure if it were to consider Petitioner's Jail-plot related assistance in a vacuum on resentencing.

## B.    Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. Const. Amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).  The prejudice prong inquires whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects[.]" United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993).  Thus, after a guilty

plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30, 94 S.Ct. 2098 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

Courts should ordinarily find ineffective assistance of counsel for failure to raise claims on appeal only when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden of showing that there is a reasonable probability that but for counsel's failure to raise an issue on

appeal, the result of the proceeding would have been different, i.e., that he would have prevailed on appeal. See Robbins, 528 U.S. at 285-86.

Petitioner claims his attorney was ineffective for failing to use a recording of a phone call made by Jeffrey Wright, Petitioner's co-Defendant and a Government witness, in which Wright claimed that he did not know the Petitioner and that law enforcement was targeting the wrong individual, as grounds to move to dismiss Petitioner's Indictment before Petitioner pleaded guilty. [Doc. 389 at 5]. The record, however, shows that Petitioner's guilty plea was knowing and voluntary and Petitioner does not argue otherwise. Petitioner thus waived his claim of ineffective assistance related to the failure to use this evidence. Moreover, Petitioner's claim that he would have succeeded on a motion to dismiss the Indictment based on this evidence is wholly conclusory and entirely unsupported by the substantial evidence against him. The Court, therefore, will dismiss this claim.

Petitioner also claims that he directed his appellate counsel to challenge "the extent of departure with regards to the 5k," and that his attorney was ineffective for advising him that he could not directly appeal the extent of the Court's §5K1.1 departure, but rather had to raise such a claim in a motion to vacate under Section 2255. [Doc. 389 at 13]. This claim also fails.

The Fourth Circuit has authority to review the extent of a district court's downward departure if "the departure decision resulted in a sentence imposed in violation of law or resulted from an incorrect application of the Guidelines." United States v. Shaw, 313 F.3d 219, 222 (4th Cir. 2002) (internal quotations omitted). However, even if Petitioner's appellate counsel were ineffective for advising Petitioner that he could not directly appeal the extent of departure. Petitioner has nonetheless failed to show a reasonable probability that the outcome of the appeal would have been different if his attorney had raised this issue on appeal. As set forth above, the Court determined the extent of downward departure for Petitioner's substantial assistance in accord with the Guidelines and existing law. Moreover, the Fourth Circuit, pursuant to Anders, reviewed the entire record and found no meritorious issues for appeal. Allison, 2023 WL 4181301, at *3.

In sum, Petitioner has failed to show he is entitled to relief under § 2255 and his motion to vacate will be dismissed.

## IV. PETITIONER'S MOTION TO RECUSE

Also pending is Petitioner's motion for recusal of the undersigned. [Doc. 396]. As grounds, Petitioner argues that recusal is appropriate because his motion to vacate "almost entirely consists of" whether the undersigned abused his discretion relative to the downward departure

determination and whether appellate counsel was ineffective for failing to seek review of this alleged abuse of discretion. [Id. at 1]. Petitioner contends that his motion to vacate would be "more appropriately handled" by another judge. [Id.].

Judicial recusals are governed by a framework of interlocking statutes. Under 28 U.S.C. § 455(a), all "judge[s] of the United States" have a general duty to "disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned." In turn, 28 U.S.C. § 455(b) offers a list of other situations requiring recusal, none of which are implicated here. See 28 U.S.C. § 455(b). Section 144 requires recusal "whenever a party to any proceeding in a district court makes a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party…." 28 U.S.C. § 144. The affidavit must state with particularity "the facts and the reasons for the belief that bias or prejudice exists…." Id. If the affidavit is legally sufficient, the court must recuse itself. Sine v. Local No. 992 Int'l Bhd. of Teamsters, 882 F.2d 913, 914 (4th Cir. 1989). However, "[a]ssertions merely of a conclusionary nature are not enough, nor are opinions and rumors." United States v. Farkas, 669 F. App'x 122, 123 (4th Cir. 2016) (per curiam) (quoting United States v. Haldeman, 559 F.2d 31, 34 (D.C. Cir. 1976)).

Here, Petitioner does not contend that the undersigned is biased or prejudiced, but does suggest that the undersigned would be "unfairly exposed[d] … to unwarranted ethical challenges … to unbiasedly[ ] review [his] own rulings for abuse of discretion." [Doc. 396 at 1 (emphasis in original)]. Petitioner submits no affidavit in support of his motion, although he does purport to submit the motion under penalty of perjury. [See id. at 3].

Petitioner has failed to set forth any cognizable basis for the Court's recusal here. District courts are frequently called upon to review their own prior decisions under 28 U.S.C. § 2255 and Petitioner has not set forth any facts, through sworn testimony or otherwise, supporting recusal. See United States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003) ("a presiding judge is not … required to recuse himself simply because of 'unsupported, irrational or highly tenuous speculation'") (quoting United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998)). The Court will deny Plaintiff's motion for recusal.

Because the Court is denying and dismissing Petitioner's motion to vacate, the Court will deny Petitioner's other pending motions not heretofore addressed as moot.

## V. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate is denied and dismissed.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 389] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Leave to Amend [Doc. 395] is **GRANTED** in accordance with the terms of this Order; Petitioner's Motion for Recusal [Doc. 396] is **DENIED**; and Petitioner's Application to Proceed in Forma Pauperis [Doc. 390], Motion for Leave to

File a Reply [Doc. 391], and Motion for Discovery and Production of Documents [Doc. 394] are **DENIED** as moot

      **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

      **IT IS SO ORDERED**.

Signed: August 1, 2024

Martin Reidinger
Chief United States District Judge